UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| DARWIN RANKIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW J. WILLETT, et al., <br><br> Defendants. | No. 1:22-CV-108-H |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Bobby Lumpkin's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 11. Lumpkin seeks to dismiss the plaintiffs' claim against him, arguing that the Court lacks jurisdiction to grant an injunction and, even if the Court had jurisdiction, the plaintiffs have not satisfied the requirements for injunctive relief. *Id.* at 3–8. Because the plaintiffs have failed to plead facts to establish standing and overcome Lumpkin's sovereign immunity, the Court lacks subject matter jurisdiction over their claim against him. Therefore, Lumpkin's motion is granted. The plaintiffs' claim for an injunction shall be dismissed without prejudice. Given the strong presumption in favor of amendment, however, the plaintiffs shall have 21 days from the issuance of this order to file an amended complaint, limited to correcting the deficiencies identified in this order.

1. **Factual and Procedural Background**

The Court takes as true the factual allegations from the plaintiffs' First Amended Complaint (Dkt. No. 10), as it must at this procedural stage. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (internal citation omitted); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In July 2020, correctional officers at the John

Middleton Unit of the TDCJ ordered inmates who had recently transferred from another unit—including the named plaintiffs—to evacuate their dorm while a search for contraband ensued. Dkt. No. 10 ¶¶ 29–32. Defendant Loflin directed the inmates to strip down to boxers and shower shoes and stand outside in the recreation yard. *Id.* ¶¶ 31–32, 41.

The plaintiffs stood in the direct sunlight for approximately four hours in temperatures exceeding 100 degrees. *Id.* ¶¶ 35–36. They were restricted from having water bottles and had access only to a water fountain covered in bird feces and a cooler that had been sitting outside for several hours. *Id.* ¶¶ 47–50. According to the plaintiffs, correctional officers mocked them with questions like whether they "enjoyed the West Texas heat" and were "getting enough sun." *Id.* ¶ 63. The officers also joked that the plaintiffs were "red like lobsters" and remarked, "That should teach ya'll a lesson." *Id.* ¶ 64.

Defendant Willett was the first to keep watch of the plaintiffs. *Id.* ¶ 44. He wore a hat and protective clothing. *Id.* ¶ 45. Although the plaintiffs were precluded from coming inside, Willett periodically took breaks and monitored them from inside with the door open. *Id.* ¶¶ 53–54. According to the plaintiffs, another officer brought Willett a bottle of water and sunscreen and commented, "It's fucking hot out there," to which Willett replied, "Why do you think I'm watching them from here? Half of them dumbasses are already burning up." *Id.* ¶ 58. While Willett put on sunscreen, he asked the plaintiffs if they wanted some, and, when they answered affirmatively, he stated, "Yeah I bet ya'll do," and, "Too bad ya'll need some sun anyways." *Id.* ¶ 59. In response to other complaints from the plaintiffs, Willett remarked, "This is what happens when ya'll fuck up." *Id.* ¶ 61. One plaintiff even advised that he had received medical instructions to stay out of direct sunlight due to his history of skin cancer. *Id.* ¶ 101. Still, Willett refused to accommodate him. *Id.* ¶ 102.

Shortly thereafter, Defendant Sanchez replaced Willett on duty so that Sanchez could, in his words, "give [Willett] a break from the sun." *Id.* ¶¶ 68–69. Sanchez, too, wore a hat and protective clothing. *Id.* ¶ 71. For a portion of his watch, he monitored the plaintiffs from inside through a window. *Id.* ¶ 72. As with Willett, Sanchez did not provide the plaintiffs any sunscreen or allow them to come inside to cool off. *Id.* ¶¶ 73–75.

The plaintiffs complain of various injuries due to their direct, prolonged exposure to the sun, including sunburns, blisters, skin spots, abnormal growths, dehydration, and heat exhaustion. *Id.* ¶¶ 26, 77–78, 81, 98, 106, 109, 113, 117, 121–22, 125, 129, 132, 134, 139, 143. Each plaintiff required medical attention from TDCJ staff and experienced pain and burning sensations due to these ailments. *Id.* ¶¶ 77, 79, 98, 103, 109, 110, 113–14, 117–18, 121–22, 125–26, 129–30, 134–35, 139–40, 143–44.

The plaintiffs allege that Willett and Sanchez violated their Eighth Amendment right against cruel and unusual punishment by showing deliberate indifference to a substantial risk of serious harm. *Id.* ¶ 160. They further allege that Loflin failed to adequately supervise Willett and Sanchez in violation of the Eighth Amendment. *Id.* ¶¶ 220–22. The plaintiffs thus seek damages from the aforementioned defendants. *Id.* ¶¶ 267, 273.

The plaintiffs who are still incarcerated also allege that Defendant Lumpkin, in his official capacity as Director of the TDCJ's Correctional Institutions Division, violated the Eighth Amendment by "operating the TDCJ secure facilities without the adequate policies and practices to protect against unnecessary and wanton infliction of punishment." *Id.* ¶¶ 231–33. These plaintiffs seek a temporary restraining order and preliminary and permanent injunctive relief requiring Lumpkin to cease the practice of forcing them to "stand outside without proper clothing for the elements while suffering prolonged exposure

to the heat and sun during dorm searches[,] which require [them] to be removed from their dorms for extended periods of time." *Id.* ¶¶ 245, 249.

Lumpkin moved to dismiss the incarcerated plaintiffs' claim against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 11 at 1. The plaintiffs responded in opposition (Dkt. No. 21), and Lumpkin has not replied. Because the time for a reply has passed (*see* Loc. Civ. R. 7.1(f)), the motion is ripe for review.

## 2. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a claim for a lack of subject matter jurisdiction. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

The plaintiff "bears the burden of proof that jurisdiction does in fact exist." *Id.* A defendant might raise one of two types of challenges to subject matter jurisdiction: facial or factual. *See Paterson*, 644 F.2d at 523. When a motion to dismiss under Rule 12(b)(1), as here, is based on the face of the complaint and does not incorporate external evidence, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.* A court should grant dismissal when "it appears certain that the plaintiff[] cannot prove any set of facts in support of [his] claim which would entitle [him] to relief." *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992).

– 4 –

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks . . . constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  Article III, Section 2, of the United States Constitution provides that courts shall resolve only "[c]ases" or "[c]ontroversies."  For a case to be justiciable under Article III, a plaintiff must have standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, the plaintiff must "provide sufficient facts, which, if taken as true, establish an injury . . . that could be redressed by an order of th[e] court."  *Gilbert v. Donahoe*, 751 F.3d 303, 312 (5th Cir. 2014).  The absence of a redressable injury deprives a plaintiff of standing and, consequently, deprives a court of subject matter jurisdiction.  *See Crane v. Johnson*, 783 F.3d 244, 255 (5th Cir. 2015).

Additionally, a court lacks subject matter jurisdiction when sovereign immunity bars suit.  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).  As a general matter, "Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court."  *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).  States are thus "immune from private suits unless they consent or unless Congress validly strips their immunity."  *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022).  Sovereign immunity also "prohibits suits against state officials or agencies that are effectively suits against a state," such as when a state officer is sued in his official capacity.  *Paxton*, 943 F.3d at 997 (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

3. Analysis

    A.    **The plaintiffs lack standing to seek an injunction because they have failed to plead facts showing a substantial risk that they will suffer future injury.**

For the Court to exercise subject matter jurisdiction, the plaintiffs must have standing to bring their claims. Based on their complaint as currently pled, they do not.

To establish standing, a plaintiff must demonstrate three elements: (1) injury in fact, (2) causation, and (3) redressability. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). The injury-in-fact and redressability elements intersect where, as here, a plaintiff seeks injunctive or declaratory relief. *Id.* This is because an injunction "cannot conceivably remedy any past wrong"; therefore, a plaintiff seeking one "can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)). The plaintiff must show that further injury is "certainly impending." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "[M]ere '[a]llegations of possible future injury' do not suffice." *Id.* Rather, there "must be at least a 'substantial risk' that the injury will occur." *Id.* (quoting *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021)).

With respect to their claim against Lumpkin, the plaintiffs seek only equitable relief. *See* Dkt. No. 10 ¶¶ 236–64. In particular, the plaintiffs who are still incarcerated seek to enjoin Lumpkin, in his official capacity as a director of the TDCJ, from implementing practices that require them to stand in direct sunlight for prolonged periods of time during dorm searches. *Id.* ¶¶ 245, 249. But the Supreme Court has held that, although a plaintiff may recover damages for a one-off instance of illegal conduct, in order to "meet[] the preconditions for asserting an injunctive claim in a federal forum," the plaintiff must

demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 109, 111 (1983). Here, even when accepting the facts alleged by the plaintiffs as true, the plaintiffs have pointed to just a single, isolated instance where TDCJ officers utilized the measures of which they complain. And they have pled no facts indicating that those measures will be imposed against them again in the future.

True, "dorm searches for contraband are a routine practice" and "will continue to occur" at the TDCJ—as both parties concede. Dkt. No. 11 at 5. And the plaintiffs allege that TDCJ policy requires inmates to evacuate their dorms during searches. Dkt. No. 10 ¶ 244. Even so, it does not follow that every search will require the plaintiffs to stand outside, in high temperatures and direct sunlight, for several hours. In fact, as the plaintiffs admit, just a week after the alleged incident, "another search for contraband was performed[,] and instead of being placed [i]n the recreation yard, . . . the [p]laintiffs[] were placed in[] the gymnasium." *Id.* ¶ 39. Looking at the face of the complaint, then, the only facts pled by the plaintiffs concerning subsequent searches of their dorms suggest that the plaintiffs have not received similar treatment again. The speculative, unsupported nature of their claim of imminent injury thus "requires a finding that th[e] prerequisite [for] equitable relief has not been fulfilled." *See Lyons*, 461 U.S. at 111.

Regardless, none of the plaintiffs seeking an injunction are still located at the Middleton Unit, where each of the officer-defendants works and where the conduct at issue occurred. *See* Dkt. No. 10 ¶¶ 8–14. In an analogous case, in response to a plaintiff's complaint regarding a judge's oath practices, the Fifth Circuit held that the plaintiff lacked standing to enjoin the judge from implementing those practices. *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992). The court reasoned that, given the "slim"

chance that the plaintiff "w[ould] be selected again for jury service and that [the same judge] w[ould] be assigned again to oversee her selection," the plaintiff failed to "show a real and immediate threat that she w[ould] again appear before [that judge]" and be injured in a similar fashion. *Id.* at 1285–86. Likewise, the plaintiffs here have failed to demonstrate how the officer-defendants, who lack disciplinary authority beyond their unit, will repeat the same conduct against them even though none of the incarcerated plaintiffs still reside at the Middleton Unit. Given the practical impossibility that the plaintiffs will be subjected to future adverse action by these defendants, an injunction could not plausibly provide relief.

Moreover, the plaintiffs have not identified any TDCJ policy or practice that requires inmates to succumb to prolonged, unprotected sun exposure during cell searches. The Fifth Circuit has held that a plaintiff might demonstrate a substantial risk of future injury by pointing to a law or policy that will likely be enforced against him in the future; however, when an alleged wrongdoer did "not act[] pursuant to any state or local rule or statute, or even some personal policy," the threat of future injury diminishes. *Crawford*, 1 F.4th at 376. The same principle applies here. The plaintiffs have pled no facts indicating that the officer-defendants acted in accordance with any TDCJ policy or practice—formal or not—when they allegedly forced the plaintiffs to stand outside for four hours. Without facts showing systemic support of the defendants' conduct, nothing suggests that those officers or other TDCJ officers will repeat the same offense. The past injury suffered by the plaintiffs is thus best characterized as "episodic" and uncertain to recur. *See id.*

The plaintiffs' reliance on current Supreme Court and Fifth Circuit precedent also misses the mark. In particular, the plaintiffs point to *Helling v. McKinney*, where the Supreme Court held that a prisoner could seek to enjoin a prison from exposing him to

perpetual secondhand smoke even though he had not yet suffered any symptoms. 509 U.S. 25, 28, 33 (1993). The plaintiffs also cite the Fifth Circuit's holding in *Ball v. LeBlanc* that inmates had properly alleged an injury due to consistently high temperatures in their cells even though none had yet shown any heat-related symptoms. 792 F.3d 584, 590, 593 (5th Cir. 2015). The holdings in each of these cases, however, relied on a key finding: that present, persisting prison conditions posed a substantial risk of serious harm to the plaintiffs. *See Helling*, 509 U.S. 25 at 33; *Ball*, 792 F.3d 593–94. The plaintiffs here identify no such condition that currently affects them; instead, they merely speculate that officers will in the future require direct, prolonged sun exposure during cell searches even though, as far as the complaint alleges, no officer has done so since the initial incident.

For these reasons, although the plaintiffs may have properly alleged a claim for damages, they have failed to demonstrate a certainly impending future injury that can be redressed through injunctive relief.[1] Having properly alleged neither an injury in fact nor redressability, the plaintiffs lack standing to seek an injunction.

> **B.** **The plaintiffs have failed to plead facts necessary to overcome Lumpkin's sovereign immunity.**

For the Court to exercise subject matter jurisdiction, the plaintiffs must also plead facts to overcome Lumpkin's sovereign immunity. Again, they have not.

Sovereign immunity generally bars suits against state officials; however, a court may exercise jurisdiction "over a lawsuit against a 'state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law.'" *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 451 (5th Cir. 2022) (quoting *Williams On Behalf of J.E.*

---

[1] To the extent the plaintiffs also seek declaratory relief, the same analysis applies.

*v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020)).  This is because when a state official "seeks to enforce [] a violation of the Federal Constitution," he "comes into conflict with [a] superior authority," so "[t]he state has no power to impart to him any immunity." *Ex parte Young*, 209 U.S. 123, 159–60 (1908).  Put differently, "a state official is 'not the State for sovereign-immunity purposes' when 'a federal court commands [him or her] to do nothing more than refrain from violating federal law.'"  *Williams On Behalf of J.E.*, 954 F.3d at 736 (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)).

Importantly, this exception to sovereign immunity is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."  *Id.* at 737 (quoting *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)).  A plaintiff "must allege that [a] defendant[] [] [is] *currently* violating federal law."  *Id.* (emphasis in original).  "Merely requesting injunctive or declaratory relief is not enough."  *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 471 (5th Cir. 2020).  Nor is pointing to "[c]ontinuing damages" from a past violation.  *Rowan Ct. Subdivision 2013 Ltd. P'ship v. La. Hous. Corp.*, 749 F. App'x 234, 237 (5th Cir. 2018).  Rather, a plaintiff must identify a continuing violation.  *Id.*

The requirement that a plaintiff demonstrate an "ongoing violation of federal law" to overcome sovereign immunity parallels the requirement that he demonstrate a "significant possibility of future harm" to establish standing for injunctive relief.  *Paxton*, 943 F.3d at 1002.  Though not dispositive, a finding with respect to one "tends toward" a corresponding finding with respect to the other.  *Id.*

Neither party disputes that Lumpkin—the Director of the TDCJ's Correctional Institutions Division—is a state official sued in his official capacity and, as such, is entitled

to sovereign immunity apart from an exception. *See* Dkt. Nos. 11 at 6; 21 at 12–13. And, based on the face of the complaint, no exception applies. As discussed above, the plaintiffs have identified just one instance in which the officer-defendants allegedly violated their constitutional rights, and the plaintiffs have failed to plead facts that indicate future violations are certainly impending. *See supra* Section 3.A. Devoid of these critical facts, the plaintiffs' complaint falls short of demonstrating the ongoing violation of federal law required by Fifth Circuit and Supreme Court precedent. Even if the plaintiffs continue to suffer adverse effects due to their prolonged, direct sun exposure, those effects, which—as far as the complaint alleges—are tied to just one past violation, cannot establish a present violation of federal law. Therefore, even though the plaintiffs request injunctive relief, they have failed to allege the facts necessary to overcome Lumpkin's sovereign immunity.

        **C.**    **The Court grants the plaintiffs leave to amend their complaint.**

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." Fifth Circuit precedent likewise favors the amendment of pleadings after dismissal. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted).

In light of this policy favoring amendment, the plaintiffs may file an amended complaint by no later than 21 days from the issuance of this order. Any amendment shall be limited to addressing the factual deficiencies identified in this order.

**4.    Conclusion**

The plaintiffs may have properly alleged claims for damages against the defendants; however, injunctive relief requires a different showing. In particular, to survive a motion to dismiss, the plaintiffs must plead facts demonstrating more than a one-off, past violation. Instead, they must plead facts showing a continuing violation. But they have not done so. Therefore, based on the complaint as currently pled, the Court lacks subject matter jurisdiction over the plaintiffs' claim for injunctive relief against Lumpkin. Lumpkin's motion to dismiss (Dkt. No. 11) is granted for that reason alone, and the plaintiffs' claim against him shall be dismissed without prejudice. Without jurisdiction, the Court need not, and should not, consider the other bases of Lumpkin's motion. If the plaintiffs so choose, they may attempt to cure the deficiencies identified herein by filing an amended complaint by no later than 21 days from the issuance of this order.

Additionally, Lumpkin's first motion to dismiss (Dkt. No. 6), which addresses the plaintiffs' original complaint (Dkt. No. 1), is denied as moot because it was superseded by the current motion to dismiss addressing the plaintiffs' operative complaint.

So ordered on February 15, 2023.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE